Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Andrew Magsumbol

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-04221-SC |
| Plaintiff, | |
| | **NOTICE OF MOTION AND MOTION FOR COSTS AND ATTORNEY FEES** |
| v. | |
| ANDREW MAGSUMBOL | **Honorable Samuel Conti** |
| | **July 19, 2013 at 10:00 a.m.** |
| | **Courtroom 1 – 17th Floor** |
| Defendants. | |

1

**NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that on Friday, July 19, 2013 at 10:00 a.m., before the

3   Honorable  Samuel Conti in Courtroom 1 -17th Floor of the United States District Court for the

4   Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San

5   Francisco, CA 94102.  Defendant Andrew Magsumbol will and hereby does move for an order

6   awarding attorney's fees and expenses in the total amount of $3850.

7       Defendant brings this motion pursuant to 17 U.S.C. §505 on the grounds that Defendant is

8   the prevailing party on each of the relevant copyright claims.  Defendant's motion is based on this

9   notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits

10  submitted therewith, and all other papers filed and proceedings held in this action.

11

12

13

14  DATED: June 13, 2013            Respectfully Submitted,

15                                  NICHOLAS RANALLO, ATTORNEY AT LAW

16

17                                  By:_____/s/ Nicholas Ranallo
                                    Nicholas Ranallo (Cal Bar #275016)
18                                  Attorney for Andrew Magsumbol
                                    371 Dogwood Way,
19                                  Boulder Creek, CA 95006
                                    P: 831.703.4011
20                                  F: 831.533.5073
                                    nick@ranallolawoffice.com
21

22

23

24

25

26

27

28

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant Andrew Magsumbol

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-04221-SC |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES AND COSTS PURSUANT TO 17 USC §505.** |
| ANDREW MAGSUMBOL | |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION – FACTUAL AND PROCEDURAL BACKGROUND..................2

        A.      AF Holdings, LLC, Prenda Law, Inc., and "Copyright Trolling"............................2

        B.      The  Declaration of Delvan Neville.............................................................................3

        C.      Alan Cooper and the Forged Assignment in This Action.........................................5

        D.      Procedural History of the Instant Case.....................................................................6

II.     LEGAL STANDARD.......................................................................................................8

III.    ARGUMENT

        A.      Mr. Magsumbol is the Prevailing Party....................................................................9

        B.      The Fogerty Factors Strongly Support An Award of Costs in the Instant Case.......9

                1.      Frivolousness......................................................................................................9

                2.      Motivation.........................................................................................................10

                3.      Objective Unreasonableness of Factual and Legal Arguments..................11

                4.      The Need In Particular Circumstances to Advance Considerations of
                        Compensation and Deterrence.........................................................................13

                5.      The Degree of Success Obtained....................................................................15

        C.      Relevant Case Law Supports and Award of Fees and Costs in the Instant
                Case..................................................................................................................................15

        D.      Defendant Has Reasonably Incurred $3850 in Recoverable Fees and
                Costs.................................................................................................................................17

IV.     CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**

*AF Holdings v. Botson,* 2012 WL 5426091 (N.D. Cal. Nov. 6, 2012)...........................................12

*AF Holdings v. Hatfield,* 2013 WL 97755 (N.D. Cal. Jan 7, 2013)..................................................12

*Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008)........................................16

*Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004).........14

*Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002)...........................................................................8

*Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989).........................................................................17

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human* Resources, 532 U.S. 598  (2001)....................................................................................................9

*Capitol Records v. Foster,* 2007 WL 1028532 (W.D. Okla., 2007)...........................................16,17

*Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994)..........................................................................8,9,13

*Halicki Films, LLC v. Sanderson Sales & Marketing,* 547 F.3d 1213, 1230 (9th Cir. 2008)..........15

*HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005)................17,18

*Ingenuity 13 v. Doe,* 2013 WL 1898633 (C.D. Cal. May 6, 2013)....................................................1

*Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).....................................................................8,15

*United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011).......................17

*United States v. Standard Oil Co. of Cal.,* 603 F.2d 100, 103 (9th Cir. 1979)..................................8

*Wall Data Inc., v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 787 (9th Cir. 2006).............15

*Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005)................................16

*Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)................................17

**STATUTES**

17 U.S.C. §505.................................................................................................................................8

1

## I.    INTRODUCTION – FACTUAL AND PROCEDURAL BACKGROUND

2

3

### A.    AF HOLDINGS, LLC PRENDA LAW, INC. AND "COPYRIGHT TROLLING"

4

> "Plaintiffs have outmaneuvered the legal system.  They've discovered the nexus
> of antiquated copyright laws, paralyzing social stigma, and unaffordable defense
> costs.   And they exploit this anomaly by accusing individuals of illegally
> downloading a single pornographic video.  Then they offer to settle – for a sum
> calculated to be just below the cost of a bare-bones defense.   For these
> individuals, resistance is futile; most reluctantly pay rather than have their names
> associated with illegally downloading porn."

5

6

7

8    Ingenuity 13 v. Doe, 2013 WL 1898633 (C.D. Cal. May 6, 2013).  A copy of this order is annexed

9    hereto as Exhibit A.  The quote above kicks off Judge Wright's Order Issuing Sanctions against

10   AF Holdings, Ingenuity 13, Prenda Law, Inc., and the related individuals and entities that

11   "collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13." *Id.* at n1.  It is

12   also the most concise and accurate description of the "copyright trolling" phenomenon that

13   defense counsel has seen.  Defendant has previously described Prenda Law and AF Holdings'

14   business in substantial detail, and will offer only a quick recap with some additional important

15   details that were unavailable until very recently.

16       Prenda Law, Inc., is the successor law firm to Steele Hansmeier, PLLC.  According to the

17   March 11th testimony of Brett Gibbs in the Central District of California, John Steele and Paul

18   Hansmeier continued to supervise AF Holdings' litigation after the change from Steele Hansmeier

19   to Prenda Law.  See Transcript of March 11th Hearing on Order to Show Cause in *Ingenuity 13 v.*

20   *Doe,* 12-cv-08333-ODW (JCx)  at 77:10-11.  A copy of this transcript (hereinafter "March 11th

21   Transcript") is annexed hereto as Exhibit B.   Mr. Steele and Mr. Hansmeier are recurring

22   characters in the instant drama.

23       AF Holdings is an offshore LLC with uncertain ownership, uncertain membership, and

24   purportedly "undefined" beneficiaries (though Mr. Lutz did, subsequently, offer a clear definition

25   of the unborn beneficiaries).  AF Holdings' entire business, by its own admission, is limited to

26   filing copyright lawsuits.  See 30(b)(6) Deposition Testimony of Paul Hansmeier, at 21:15-17.

27   (hereinafter "Hansmeier Dep").  A copy of Mr. Hansmeier's deposition is annexed hereto as

28

1  Exhibit C.

2      AF Holdings claims that it does not distribute the works that form the basis of its lawsuits,

3  and claim that no individuals or entities (other than AF Holdings) have the legal right to distribute

4  the subject works (Hansmeier Dep. 154:1-21 & 204:13-17).  AF Holdings likewise testified that it

5  has not received any revenue from the legitimate licensing of its works (Hansmeier Dep. at 21).

6  These facts, by themselves, raise significant questions regarding Plaintiff's business model and the

7  application of the Copyright Act, given the stated purposes of the act.  As described below,

8  however, the reality appears even worse than AF Holdings has admitted.  Indeed, it appears that

9  AF Holdings and/or Prenda Law not only refuse to license the work for any legitimate

10 distribution, but also intentionally offer their own works for free via BitTorrent – and then sue the

11 IP addresses that connect to the work.

12

13 **B.      THE DECLARATION OF DELVAN NEVILLE**

14      On June 3, 2013, the Declaration of Delvan Neville (hereinafter "Neville Declaration")

15 was filed in *First Time Videos, LLC v. Paul Oppold,* 6:12-cv-01493 (M.D. Fla.).  A copy of this

16 declaration is attached hereto as Exhibit D.  The Neville Declaration analyzed the data collection

17 methods of 6881 Forensics (the firm used by AF Holdings in the instant case) and the origin of

18 many of the works that have formed the basis of Prenda Law Inc.'s copyright actions.  Mr.

19 Neville's declaration is extremely detailed, and analyzes information from a variety of sources in

20 order to come to his alarming conclusions.

21      Mr. Neville states that one purpose of the investigation was "to pinpoint the likely origin of

22 the user 'sharkmp4' on the website known as the Pirate Bay that originated torrents relating to

23 copyrights held by companies 'AF Holdings' and 'Ingenuity 13.'" Neville Dec. at ¶24.  This user,

24 sharkmp4, is the apparent source of a large number of works that later formed the basis of Prenda

25 Law, Inc.'s infringement lawsuits.

26      Mr. Neville goes on to note that "Sharkmp4 posted on the Pirate Bay torrent information

27 sufficient to locate works of AF Holdings, specifically the works "Popular Demand" and "Sexual

28

3

Obsession" and posted hash values of a torrent that the user created on to the Pirate Bay." Neville Dec. at ¶26. "Popular Demand" is, of course, the work that forms the basis of the instant suit. Mr. Neville notes that sharkmp4 is also the originator of a number of Ingenuity 13 works, *including works that did not appear to have been commercially available at any time before they were posted by the user.*

In order to identify the sharkmp4 user, Mr. Neville compared information from a variety of sources (each of which is exhaustively discussed in the declaration) and concluded that "It appears from all the evidence that **John Steele (or someone under his control or with access to his Go-Daddy account records with authorization to make changes to domain names) is the most probable candidate for the identity of Pirate Bay user sharkmp4.**" Neville Dec. at ¶47 (emphasis added). Mr. Neville reiterates this conclusion in ¶48, noting that 6881 Forensics is closely linked to the sharkmp4 user, and that this "leads again to the conclusion that John Steele or his agents are sharkmp4..." Neville Dec. at ¶48. Finally, Mr. Neville ends with the coup de grace:

> "Normally, in situations where a copyright is being enforced, based upon the investigation, I would advise the owner of the copyright to pursue further inquiry of John Steele and/or 6881 Forensics to determine the identity of Pirate Bay user sharkmp44. Because all three entities appear under the same control, it is my belief that **the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement for the purpose of monetization of copyrights of commercially low value.**" Neville Dec at ¶50.

The importance of Mr. Neville's declaration should not be understated. Basically, as described herein, agents of Prenda Law/AF Holdings obtain dubious grants of rights based on signatures that have apparently been forged (see below). Once such rights are secured, these agents then post a link to the work on the Pirate Bay, intentionally upload the work to the BitTorrent, and then sue any IP address that connects to the work which they have uploaded. A nifty trick, perhaps, but one that simply does not accord with the proper purposes of the Copyright Act.

/

//

**C.    ALAN COOPER AND THE FORGED ASSIGNMENT IN THIS ACTION**

As the Court likely recalls, the assignment in this matter was purportedly signed by Alan Cooper, however the only Alan Cooper that has come forward has explicitly disavowed the document, and any association with AF Holdings.  For example, during his March 11th testimony before the Central District of California, Mr. Cooper explicitly denied that he had ever been asked to become a corporate representative for AF Holdings (Mar. 11 Transcript at 27:2-4) and explicitly denies executing the assignment for "Popular Demand" (Mar. 11 Transcript at 27:24-28:8).  The principals of AF Holdings/Prenda Law, including John Steele, Paul Hansmeier, and Paul Duffy, each invoked the Fifth Amendment when given the opportunity to explain their own involvement in the Alan Cooper issue.  See Transcript of April 2, 2012 hearing regarding Order to Show Cause in *Ingenuity 13 v. Does,* 12-cv-08333-ODW (JCx) in the Central District of California (hereinafter "April 2 Transcript") pg. 7 & 9.  A copy of this transcript is annexed hereto as Exhibit E.  This chain of events led Judge Wright to issue findings of fact which included the finding that

> "The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342).  The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings.  Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele.  There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13." Exhibit A, at 4.

In addition to Judge Wright's finding of fact, AF Holdings' own statements and filings make it abundantly clear that they cannot possibly authenticate the assignment that forms the basis of this action.  AF Holdings has twice identified Mark Lutz as the sole individual that they intend to use to authenticate the questioned assignment.  See Exhibit F.  Notwithstanding these representations, AF Holdings' deposition testimony clearly established that Mr. Lutz does not, in fact, have any personal knowledge regarding the assignment in this case and could not authenticate the assignment if called upon to do so.

According to Mr. Hansmeier's testimony, Mark Lutz tasked John Steele with finding an unpaid "corporate representative" to execute the assignment in this case.  More specifically, "The

manner in which Mr. Cooper was designated as a corporate representative was Mark Lutz asked attorney John Steele to arrange for a corporate representative to acknowledge the assignment agreement on behalf of AF Holdings.  Mr. Steele did so and returned the assignment agreement to AF Holdings bearing the signature of Mr. Alan Cooper." (Hansmeier Dep. 122:5-11).  When asked whether the Mr. Steele's former caretaker, represented by attorney Paul Godfread, was the individual who executed the assignment, Mr. Hansmeier responded that

> "Well, first of all,  I don't know who attorney Godfread represents and who he doesn't represent.  If you 're talking about the guy who's in Minnesota and was John Steele's former caretaker, all I can say is that AF Holdings – **the only person who knows who this Alan Cooper is is John Steele** and we asked Mr. Steele, is this the same guy, is this not the same guy, is there another Alan Cooper and Mr. Steele declined to respond on the basis that Mr. Cooper has sued Mr. Steele and they're actively involved in litigation." (Hansmeier Dep. 126:18 – 127:2)(emphasis added)

Under Federal Rule of Evidence 902, authentication is a prerequisite for the introduction of documentary evidence, and only Mark Lutz has been identified by Plaintiff's Rule 26 disclosures as possessing the information required to authenticate.  However, as noted above, Mark Lutz and AF Holdings do not have the knowledge required to authenticate the assignment.  Moreover, the sole individual in possession of such knowledge, according to AF Holdings, has recently chosen to invoke the Fifth Amendment rather than testify to his role in AF Holdings and the creation of the subject assignments.

**D.    PROCEDURAL HISTORY OF THE INSTANT CASE**

The complaint in this matter was file on August 9, 2012, accusing an unidentified "John Doe" defendant of downloading and sharing the pornographic work "Popular Demand" (hereinafter "the work") via the BitTorrent protocol.  On August 24, 2012, Plaintiff filed an ex parte application for expedited discovery to identify the subscriber associated with a particular IP address alleged to be sharing the work.  Plaintiff's application was granted on September 18, 2012.  Thereafter, Plaintiff learned that Andrew Magsumbol was the subscriber that paid the internet bill associated with the IP address at issue in this suit.  This was, quite clearly, Plaintiff's

6

1   entire basis for choosing Mr. Magsumbol as the defendant.  On January 8, 2013, Mr. Magsumbol
2   filed an answer denying each of Plaintiff's substantive allegations.

3       On January 28, 2013, Mr. Magsumbol filed a motion requesting that this Court require
4   Plaintiff to post an undertaking, based on the objective weakness of Plaintiff's evidence of
5   infringement and the substantial unresolved questions regarding the assignment that forms the
6   entire basis of Plaintiff's claims.  In support of his motion, Mr. Magsumbol submitted a
7   declaration that he was in class on the date of the alleged infringement, from several hours before
8   the alleged infringement until several hours after.  See ECF No. 20-1.  Moreover, Mr. Magsumbol
9   stated that his internet access was unsecured at the time of the infringement, and that he lived in an
10  apartment building with approximately 48 individual units.  *Id.*  As such, the universe of potential
11  infringers was extensive.

12      Plaintiff's opposition to the motion for an undertaking included absolutely no facts to
13  contradict the apparent forgery that formed the basis for their claims of standing, nor for the
14  proposition that Mr. Magsumbol was actually the individual that shared "Popular Demand" via
15  BitTorrent.

16      On February 22, 2012 (following an Order to Show Cause in the Central District of
17  California focused on the fraud described herein), Plaintiff attempted to "voluntarily" dismiss its
18  claims against Mr. Magsumbol without prejudice.  This result would allow Plaintiff to escape
19  liability for attorney fees based on its ill-considered lawsuit, however this Court was not
20  convinced.   On February 25, 2013, this court denied Plaintiff's motion to dismiss without
21  prejudice, noting that "Plaintiff brought this case knowing the rules of this jurisdiction and the
22  risks of litigation...Plaintiff's reasons for requesting dismissal are not compelling."  ECF No. 36 at
23  2.   Shortly thereafter, on March 18, 2013, this Court granted defendant's request for an
24  undertaking, and ordered Plaintiff to post $48,000, or face dismissal with prejudice.  Plaintiff
25  failed to post the required undertaking and this matter was dismissed, with prejudice, on May 30,
26  2013.

27

28

## II.    LEGAL AUTHORITY

An award of fees to a prevailing party may be made pursuant to a statute or rule providing for the shifting of fees to the losing party. *United States v. Standard Oil Co. of Cal.,* 603 F.2d 100, 103 (9th Cir. 1979). The Copyright Act includes a fee shifting provision in 17 U.S.C. §505, which states that "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof... the court may also award a reasonable attorney's fee to the prevailing party as a part of the costs."

In *Fogerty v. Fantasy, Inc,* the Supreme Court held that prevailing plaintiffs and prevailing defendants should be treated alike for purposes of an award of attorney fees, and that any award of attorney fees to a prevailing party is left to the sound discretion of the trial court. *Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994). The Ninth Circuit has subsequently recognized that the "evenhanded" approach adopted in *Fogerty* is appropriate. See, e.g. *Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002).

In exercising its discretion, the Court looks to various non-exclusive factors approved by the Supreme Court in *Fogerty*, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty* at 534, n.19. The Ninth Circuit has adopted the factors set forth in *Fogerty,* and have often included a fifth factor, the degree of success obtained by the prevailing party. See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).

As described further below, Mr. Magsumbol is a prevailing party in this action, and the relevant factors strongly support an award of fees in his favor. As such, Defendant respectfully requests that this court award attorney's fees in the amount of $3850, as outlined herein, pursuant to 17 U.S.C. §505.

//
//
//

8

### III.    ARGUMENT

**A.    MR. MAGSUMBOL IS THE PREVAILING PARTY**

On May 30, 2013, this court entered its order dismissing this matter in its entirety, with prejudice.  As such, Mr. Magsumbol is unquestionably the prevailing party in this action.  He has obtained a full dismissal, with prejudice, of the copyright claims brought against him.   The dismissal in this matter is a dismissal on the merits, precluding any further suit by the Plaintiff. This constitutes the "material alteration of the legal relationship of the parties," necessary to support an award of fees.   See *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 604 (2001).

**B.    THE FOGERTY FACTORS STRONGLY SUPPORT AN AWARD OF COSTS AND ATTORNEY FEES IN THE INSTANT CASE**

As noted above, the decision to award attorney's fees to a prevailing party in a copyright action is left in the discretion of the trial courts,  though the court should consider various non-exclusive factors to guide its determination.  These include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty,* 510 U.S. 517, 534 n.19.  As described further below, an analysis of these factors weighs heavily in favor of an award in the instant case.

**1.    Frivolousness**

Although a successful defendant is not required to demonstrate frivolousness or bad faith in order to be awarded fees, the presence of either weighs heavily in favor of such an award. Plaintiff's claims can accurately be described as frivolous, and the fraud allegations related to Alan Cooper are strongly suggestive of AF Holdings' bad faith.  As described above, Alan Cooper, the purported signatory of the assignment in this case, has denied under oath that he executed the document. As Judge Wright's Order to Show Cause noted, this is problematic for a number of reasons, including that "by bringing these cases, **Plaintiff's conduct can be**

9

**considered vexatious**, as these cases were filed for a facially improper purpose." See Exhibit G at 9 (emphasis added).   Additionally, as noted above, Plaintiff has brought infringement suits based on "infringements" that it has intentionally induced.  This is an outright abuse of the judicial system, and the Copyright Act's statutory damages  provisions.

In addition to the frivolousness and bad faith inherent in bringing hundreds of lawsuits based on forged or fraudulent assignments, Plaintiff's claims are so lacking in legal and factual support that their continued prosecution can be considered frivolous.   The objective unreasonableness of Plaintiff's factual and legal arguments is considered as a discrete factor in the attorney fee inquiry, and will be discussed separately below.  Let it suffice for now to point out that Plaintiff herein has brought copyright claims based on evidence that it has previously admitted is insufficient to identify the actual infringer, even after the Alan Cooper renunciation became public.

## 2.    Motivation

Plaintiff's motivation in bringing the lawsuit is another factor that District Courts should consider when deciding whether to award fees under the Copyright Act.  This factor likewise supports an award of fees in this case.  Plaintiff herein is not the creator of the work at issue. Instead, Plaintiff has ostensibly obtained the exclusive rights to distribute the work, though the individual that purportedly signed on its behalf has renounced any involvement.  Moreover, AF Holdings has previously admitted that it does not, in reality, distribute the works itself through any legitimate avenue.  Instead, AF Holdings business is devoted *exclusively* to filing BitTorrent lawsuits like the instant suit.  This fact was admitted by AF Holdings' 30(b)(6) deponent in the following exchange:

> Q:  Have they recognized any revenue through any sources other than litigation, for example, through legitimate licensing of it?
> A:  No.  The only source of revenue that AF Holdings will have with respect to its copyrights are if it increases in value.

(Hansmeier Dep. 21:12-18)

10

Based on the foregoing, it is difficult to believe that AF Holdings actual motivation is to deter infringement of its work, or any other purpose that aligns with the proper purpose of the Copyright Act.  Moreover, when one considers the Neville Declaration, and the conclusion that **the purpose of sharing the file by sharkmp4 appears to have been in an effort to induce infringement"** Plaintiff's true motivation becomes apparent.

AF Holdings' motivation is very clearly *not* to deter infringements, but to encourage them and seek to profit from the "infringements" that they have induced.  As has been well documented, this allows AF Holdings to pressure ISP subscribers, whether innocent or not, into paying dubious settlements in order to avoid the cost and embarrassment associated with defending yourself in federal infringement litigation involving pornographic works.

This dubious strategy has been lucrative, as this campaign has apparently netted millions of dollars[1], despite the fact that neither AF Holdings nor Prenda Law Inc/Steele Hansmeier., has ever obtained a successful judgments on the merits of its claims.  Unfortunately for Plaintiff, however, this motivation does not comport with the purpose of the Copyright Act and does nothing to forward its legitimate goals of promoting the progress of science and the useful arts. As such, the second factor weighs very heavily in favor of a fee award to defendant.

3.       **Objective Unreasonableness of Legal or Factual Arguments**

The third factor to be considered when deciding whether to award fees is the objective unreasonableness of the losing party's legal or factual arguments.  As numerous courts have recognized, Plaintiff's decision to name Mr. Magsumbol as the infringer of its copyright, based solely on his status as ISP subscriber, is factually unreasonable.  Indeed, Judge Wright considered it to be a violation of Rule 11.  See Exhibit A, at 6

The fundamental infirmity of the copyright claims in this action, as in many of AF

---

[1] See October 15, 2012 article from Forbes.com, "How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'", available at http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/, last accessed on March 21, 2013.

1    Holdings suits, is the Plaintiff's failure to conduct an adequate investigation prior to naming and

2    shaming a defendant.  Plaintiff's counsel has repeatedly admitted that an IP address is insufficient

3    to identify the actual individual that shared a particular work via BitTorrent.  This point was

4    recognized in this court's decision to require an undertaking in this matter.  Indeed, each time  AF

5    Holdings and its counsel have faced scrutiny on this point they have failed to convince a court that

6    their "investigation" was reasonable and sufficient. Two cases in this district, *AF Holdings v.*

7    *Botson,* 12-cv-2048; and *AF Holdings v. Hatfield,* 12-cv-2049 are proper exemplars.

8         To briefly summarize, each case involved defendants who were first accused of only

9    negligence and, subsequently, accused of copyright infringement based on Plaintiff's further

10   "investigation."  In each case the Plaintiff's attempt to name the subscriber as the infringer were

11   rejected, and each judge noted indicia of bad faith.  See  *AF Holdings v. Hatfield,* 2013 WL 97755

12   (N.D. Cal. Jan 7, 2013)(AF Holdings "new allegations in the revised proposed SAC are vague and

13   speculative, and do not demonstrate diligence or add any substance to the claims" and AF

14   Holdings' "conduct is at least suggestive of bad faith,"); *AF Holdings v. Botson,* 2012 WL

15   5426091 (N.D. Cal. Nov. 6, 2012)("the court is concerned that the proposed amendments are

16   sought in bad faith...simply to keep the only identified defendant 'on the hook'").

17        Moreover, as described above, Plaintiff and its counsel have recently been sanctioned for,

18   inter alia, their failure to conduct adequate pre-suit investigations.  See Exhibit A, at 6.  Judge

19   Wright's description of Plaintiffs' "investigation," is concise and accurate:

20

21        "Plaintiffs can only show that someone, using an IP address belonging to
          the subscriber, was seen online in a torrent swarm.  But Plaintiffs did not conduct
22        a sufficient investigation to determine whether that person actually downloaded
          enough data (or even anything at all) to produce a viewable video.  Further,
23        Plaintiffs cannot conclude whether that person spoofed the IP address, is the
          subscriber of that IP address, or is someone else using that subscriber's Internet
24        access." Exhibit A at 6.

25   Judge Wright's analysis is wholly accurate here.  It is particularly telling that, despite this

26   infirmity being discussed at length in the motion for undertaking, Plaintiff forwarded nothing from

27   which to conclude that this case involved *any* investigation, beyond the subpoena to the ISP.

28

Instead, Plaintiff argued, wholly without support, that "Defendant has the burden of proving that Plaintiff was not in possession of any further basis for alleging that Defendant was the infringer.  Since Defendant is not a member of Plaintiff's legal team, Defendant cannot prove that Plaintiff was not in possession of any further basis for alleging that Defendant was the infringer." See ECF 32 at 5.  This argument is repeated throughout the opposition, and is wholly unreasonable.  Indeed, if it were true, no defendant could ever obtain an undertaking, since no defendant would ever be "part of Plaintiff's legal team," who would be able to *prove* that Plaintiff *did not* have further, undisclosed, information.  Plaintiff makes this argument repeatedly in its opposition.  Based on the foregoing, and Plaintiff's history in nearly identical suits, I think it is safe to assume that Plaintiff simply was not in possession of any information, beyond the ISP subpoena identifying him as the *subscriber* of the IP address in question.

As described above, Plaintiff's arguments in this case are severely defective in their factual support and their legal contentions.  As such, this factor falls heavily in favor of an award of attorney fees to Mr. Magsumbol.

**4.    The Need in Particular Circumstances to advance Considerations of Compensation and Deterrence**

The final factor endorsed by the court in *Fogerty* is the "need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty,* 510 U.S. 517 at 534 n.19.  This factor allows the district court to recognize the unique features of each case, and to award fees when they are particularly necessary to compensate a prevailing party or deter a losing party from pursuing similar conduct in future litigation.

The instant case provides a textbook example of particular circumstances which require an award to advance considerations of both compensation and deterrence.  These circumstances have been discussed at length.  This case is merely one part of an enormous litigation campaign, built on coercing dubious "settlements" from ordinary internet subscribers based on objectively insufficient evidence.  The success of this campaign does not depend on the strength of the claims - indeed their merit is almost irrelevant.  The campaign depends on a healthy dose of shame,

1  usually delivered via a public outing on Prenda Law's website that lingers long after the suit is

2  dismissed.

3      More importantly, this campaign relies on the fundamental economic realities of federal

4  litigation to force defendants into "cost of defense" settlements.  A defendant in Mr. Magsumbol's

5  position, facing allegations that he knows to be untrue, must still make an incredibly difficult

6  decision whether to pay the "settlement," or perhaps expend far more money attempting to defend

7  themselves against embarrassing allegations in a public forum.  Mr. Magsumbol is a student and,

8  as with many students, in a relatively precarious financial position.  It is no exaggeration to say

9  that, without the prospect of an attorney fee award following the successful conclusion of the suit,

10  Mr. Magsumbol would have been wholly unable to afford counsel, and would have had to defend

11  himself, with all the dangers inherent in such a defense.

12      Without the prospect of such an award, even a principled and courageous defendant must

13  accept the near-certainty of significant financial harm in order to defend himself, and a financially-

14  strapped defendant's options are even worse.  This reality has led the Seventh Circuit to recognize

15  that "when the prevailing party is the defendant, who by definition receives not a small award but

16  no award, the presumption in favor of awarding fees is very strong."  *Assessment Technologies of*

17  *WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004).      Moreover, the relatively few

18  defendants that have chosen to stand up for themselves have done an invaluable service for

19  countless internet subscribers that would have faced similar meritless accusations, based upon

20  fraudulent assignments.  Mr. Magsumbol's principled participation in this matter was therefore

21  instrumental in uncovering a legal fraud that had been committed against thousands of citizens

22  across the country.  As such, this court has a particular interest in compensating Mr. Magsumbol

23  (or at least making him whole) for the courage of his convictions and his role in upholding the

24  integrity of the courts and this process.

25      An award of attorney fees in the instant case likewise serves to deter fraudulent and

26  meritless lawsuits.  A plaintiff in AF Holdings' position has no incentive to adequately investigate

27  their claims if they face no consequences when their claims turn out to be false.  Plaintiff's ends

28

14

are served by volume, not by accuracy.  As noted previously, AF Holdings *only* business is the filing of BitTorrent copyright lawsuits based on objectively weak evidence and apparently forged assignments.  An award of prevailing party attorney fees to successful defendants is the strongest weapon against this shotgun approach to litigation, and the most effective way to force Plaintiffs to honestly evaluate the strength of its claims *prior* to naming and serving a defendant, publicly accusing him of pirating pornography, and forcing him to incur significant expense to defend himself.

**5.     The Degree of Success Obtained**

In addition to the four non-exclusive factors which were cited approvingly by the Supreme Court, the Ninth Circuit has frequently considered a fifth factor: the degree of success obtained by the prevailing party.  See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994); *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1230 (9th Cir. 2008); *Wall Data Inc., v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006).  In the instant case Defendant has obtained total success, as each and every cause of action has been dismissed with prejudice.  Thus, to the extent that this court considers the degree of success obtained as an additional factor in the attorney fee inquiry, this factor likewise weighs heavily in support of an award of fees in the instant case.

**C.     RELEVANT CASE LAW SUPPORTS AN AWARD OF FEES IN THE INSTANT CASE**

As described above, each of the Fogerty factors weighs heavily in favor of an award of fees to Mr. Magsumbol for his successful defense in this case.  Indeed, the Northern District of California has recently awarded attorney's fees against AF Holdings in a nearly identical matter – AF Holdings v. Trinh (3:12-cv-02393-CRB).  The situation in that case was nearly identical to the instant case.

AF Holdings v. Trinh involved another "John Doe" subscriber that was (incorrectly) deemed by AF Holdings to be the infringer of its pornographic work.  Mr. Trinh sought an

15

1  undertaking based on the objective weakness of Plaintiff's claims, as Mr. Magsumbol has herein.

2  As herein, Mr. Trinh's request for an undertaking was granted, and AF Holdings failed to post any

3  bond.  As herein, AF Holdings case was eventually dismissed for failure to post the required bond.

4  Mr. Trinh subsequently sought to recover $9425 in attorney's fees under 17 USC 505.  On May

5  24, 2013, Judge Breyer granted Mr. Trinh's Motion for Attorney's Fees, and awarded the entire

6  $9425 sought.  A copy of Judge Breyer's Order confirming the award is annexed hereto as Exhibit

7  H.

8        Judge Breyer is not alone in awarding prevailing party attorney fees to successful

9  defendants in peer-to-peer infringement cases.  Other courts, in extremely similar peer-to-peer

10 infringement cases, have recognized that a fee award to a prevailing defendant does, in fact,

11 further the underlying purposes of the Copyright Act.  For example, in one case from this circuit,

12 an individual accused of improperly downloading music successfully defended herself from direct

13 infringement claims based, as herein, on a claim of pure innocence. *Atlantic Recording Corp. v.*

14 *Anderson,* 2008 WL 185806 (D.Or. 2008) .  Plaintiff eventually dismissed the claims in *Anderson*

15 "voluntarily", but not before the defendant was forced to incur significant costs.  The court noted

16 that there was ample "reason to compensate defendant in this case.  Her defense was primarily

17 factual and not based on any developing legal theories.  Though it did not help to clarify the

18 contours of copyright law, her participation was involuntary.   Her factual positions were

19 consistent, and her legal stances were reasonable..." *Id.* at *9.  The court in *Anderson* granted the

20 motion for attorney's fees, ultimately awarding over $100,000 in attorney's fees for the successful

21 defense.

22        Similarly, in *Capitol Records v. Foster*, a successful peer-to-peer infringement defendant

23 was awarded substantial attorneys fees following a successful defense.  *Capitol Records v. Foster,*

24 2007 WL 1028532 (W.D. Okla., 2007).  The court in *Foster* approvingly quoted the 7th Circuit's

25 recognition that a copyright defendant stands in a particularly precarious position since he "by

26 definition receives not a small award, but no award, awarding fees becomes particularly

27 important." *Id.* at *5, citing *Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir.

28

2005).  The *Foster* court noted that "[W]ithout the prospect of such an award, the party might be forced into a nuisance settlement, or deterred all together from exercising his rights."  *Id.*   The court goes on to note that, like here, "Her only alternative to litigating...was to capitulate to a settlement for a violation she insists she did not commit.  Such capitulation would not advance the aims of the Copyright Act..."  *Id.* at *3.

### D.      DEFENDANT HAS REASONABLY INCURRED $3850.00 IN RECOVERABLE FEES AND COSTS THUS FAR

As outlined more fully in the Declarations of Nicholas Ranallo (filed simultaneously herewith) and the Exhibits thereto, Defendant has incurred a total $3850.00 of recoverable attorney fees in this action.  Reasonable fees under the Copyright Act are determined according to the Lodestar method, and are not capped based on the actual billing arrangements of the parties.  See, e.g. *Yahoo!, Inc. v. Net Games, Inc.* 329 F.Supp.2d 1179, 1186 (N.D. Cal. 2004)("the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney).  See also *United States v. $186,416 in US Currency* 642 F.3d 753, (9th Cir. April 26, 2011); *Blanchard v. Bergeron,* 489 U.S. 87, 93-94 (1989).

Thus, although Mr. Magsumbol was charged a significantly reduced rate for his defense in this matter, the calculations herein are based on a reasonable hourly rate for counsel's services of $250/hour.  This rate has previously been determined as reasonable in this precise context, as more fully described on the Ranallo Declaration, filed concurrently herewith.  These calculations are a conservative estimate compared to the Laffey Matrix, which has previously been used as a basis for calculating reasonable fees in this district.  For example, in *HPL Technologies, Inc. Securities Litigation*, Chief Judge Walker described the Laffey Matrix as a "well-established objective source for rates that vary by experience," and used the Laffey rates to establish reasonable attorney fees in this district.  *HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005).  In so doing, the court recognized that the Laffey rate would tend to undercompensate attorneys in this district, and noted that "adjusting the Laffey matrix figures upward by

17

approximately 9% will yield rates appropriate for the Bay Area." *Id.*

Mr. Ranallo has reasonably expended at least 15.4 hours in defense of this action. Notably, this sum does not include numerous phone calls and emails between attorney and client, and countless hours of generalized research regarding plaintiff, its counsel, and the myriad suspect relationships at play in these suits. A more detailed breakdown of these hours can be found in the Ranallo Declaration and Exhibits thereto. When multiplied by the hourly rate of $250, an attorney fee amount of $3850 is reached for Mr. Ranallo.

## IV.    CONCLUSION

For the reasons outlined herein, Defendant respectfully requests an attorney fee award in the amount of $3850 to reimburse for reasonable attorney fees incurred in his defense. Mr. Magsumbol is the prevailing party in this action, based on the final dismissal of all claims against him, with prejudice. Moreover, an analysis of the relevant factors governing an award of fees strongly supports an award of fees in the instant matter, pursuant to 17 U.S.C. §505 and this court's equitable discretion. Judge Breyer has already awarded fees in a substantially identical situation, and defendant respectfully requests this court to follow suit.

DATED: June 13, 2013                    Respectfully Submitted,


                                        NICHOLAS RANALLO, ATTORNEY AT LAW


                                        By:_____/s/ Nicholas Ranallo
                                        Nicholas Ranallo (Cal Bar #275016)
                                        Attorney for Andrew Magsumbol
                                        371 Dogwood Way,
                                        Boulder Creek, CA 95006
                                        P: 831.703.4011
                                        F: 831.533.5073
                                        nick@ranallolawoffice.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 13th day of June, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/            Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law

CV 12-04221-SC MEMO IN SUPPORT OF ATTORNEY FEES